FILED
CLERK, U.S. DISTRICT COURT
8/25/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: DD DEPUTY

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
LUCY B. JENNINGS (Cal. Bar No. 301977)
Assistant United States Attorney
International Narcotics, Money Laundering,
& Racketeering Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5487
Facsimile: (213) 894-0141
E-mail: lucy.jennings@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>AMBIANCE U.S.A., INC.<br>Defendant. | No. CR 2:20-cr-00370-VAP-1<br><br>PLEA AGREEMENT FOR DEFENDANT AMBIANCE U.S.A., INC. |

1. This constitutes the plea agreement between AMBIANCE U.S.A., INC., doing business as "Ambiance Apparel," ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the investigation of defendant with respect to customs fraud, laundering of monetary instruments, and failure to file reports of currency transactions. Except as explicitly addressed below, this agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

RULE 11(c)(1)(C) AGREEMENT

2. Defendant and the USAO understand and agree that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement (e.g., impose the agreed-upon sentence), absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty pleas entered pursuant to this agreement, this agreement will, with the exception of paragraph 36 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement. Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 38 and 39 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

3. Defendant agrees to:

a. Give up the right to indictment by grand jury and, at the earliest mutually convenient opportunity requested by the USAO and provided by the Court, have an authorized corporate officer appear and plead guilty on behalf of defendant to Counts One through Eight of the Information in the form attached to this agreement as Exhibit A or a substantially similar form. Count One charges

defendant with Conspiracy, in violation of Title 18, United States Code, Section 371. Count Two charges defendant with International Promotional Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A). Count Three charges defendant with Entry of Goods Falsely Classified, in violation of Title 18, United States Code, Section 541. Count Four charges defendant with Entry of Goods by Means of False Statements, in violation of Title 18, United States Code, Section 542. Count Five charges defendant with Passing False and Fraudulent Papers Through Customhouse, in violation of Title 18, United States Code, Section 545. Counts Six through Eight charge defendant with Failure to File Report of Currency Transaction in a Non-Financial Trade or Business, in violation of Title 31, United States Code, Sections 5331(a)(1) and 5322(b).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement, including requesting that the Court impose the parties' agreed upon sentence in accordance with paragraph 28 of this agreement and the terms of Exhibit E.

d. Appear, through an authorized officer, for all court appearances and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office ("USPO"), and the Court.

g. Pay the applicable special assessment at the time the court accepts this agreement and agreed-upon sentence, unless otherwise provided by the Court.

h. Complete the Financial Disclosure Statement provided by the USAO and, within 30 days of Court's acceptance of this plea agreement, deliver a copy of the signed statement, along with all required supporting documentation, by email to: usacac.FinLit@usdoj.gov or by mail to:

United States Attorney's Office
Financial Litigation Section, Pre-Judgment Group
300 N. Los Angeles St., Suite 7516
Los Angeles, CA 90012

i. Authorize the USAO to obtain reports from consumer/credit reporting agencies immediately after signing this plea agreement.

j. Sign the Withdrawal of Administrative Claims agreement prepared by the United States Customs and Border Protection.

k. Defendant further agrees that $35,227,855.45 of the funds seized by law enforcement officials on September 20, 2014 as part of the investigation into defendant and Sang Bum Noh (aka "Ed Noh") (the "Seized Funds") shall be applied to the restitution award ordered by the Court.

FORFEITURE AND FINANCIAL ACCOUNTABILITY

4. Defendant further agrees:

a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, and involved in the illegal activity to which defendant is

pleading guilty, including but not limited to $1,104,997.55 in U.S. funds seized by law enforcement officials on September 10, 2014 (the "Forfeitable Property").

b. To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the property.

c. To take whatever steps are necessary to pass to the United States clear title to the the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of itself or any other individual or entity, defendant shall withdraw any such claims or petitions, and further agrees to waive any right it may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further agrees to waive any and all rights to further notice regarding the disposition of the Forfeitable Property.

e. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

f. Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

g. So long as the Court accepts the agreed upon plea, to the entry as part of defendant's guilty plea of a personal money judgment of forfeiture against defendant in the amount of

$81,564,856.08, to be paid as outlined in Exhibit E, which sum defendant admits is forfeitable due to the violations described in the factual basis of the plea agreement. Defendant understands that the money judgment of forfeiture is part of defendant's sentence and is separate from any restitution that may be imposed by the Court.

h. That the forfeiture of the Forfeitable Property and entry of the money judgment of forfeiture shall not be counted toward satisfaction of any special assessment, restitution, costs, or other penalty the Court may impose.

i. With respect to the criminal forfeiture or money judgment ordered as part of the agreed-upon sentence pursuant to this agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture and money judgment at sentencing, and incorporation of the forfeiture and money judgment in the judgment; (2) all constitutional and statutory challenges to the forfeiture and/or money judgment (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Asset or money judgment in any proceeding on any grounds including, without limitation, that the forfeiture and/or money judgment constitute an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Asset and money judgment are part of the sentence that will be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

5. The USAO agrees that $35,227,855.45 of the the Seized Funds shall be applied to the restitution award. Upon sentencing, the government will transmit $35,227,855.45 of the Seized Funds to the Clerk of the Court to be applied to the outstanding restitution amount, as set forth in Schedule E.

THE USAO'S OBLIGATIONS

6. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence as agreed to by the parties and set forth in paragraph 28 of this plea agreement.

c. Not further criminally prosecute defendant for violations arising out of defendant's conduct described in the agreed-to factual basis set forth in Exhibit B. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing, the Court may consider the uncharged conduct in determining whether to accept this agreement and impose the agreed-upon sentence.

COMPANY AUTHORIZATION

7. Defendant represents that it is authorized to enter into this agreement. At the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a corporate resolution signed by a company representative for defendant that designates a company officer who is authorized to take the actions specified in this agreement, including pleading guilty on

behalf of the company. Such documents shall also state that all legal formalities for such authorizations have been observed.

ORGANIZATIONAL CHANGES AND APPLICABILITY

8. This agreement shall bind defendant, its successor entities (if any), and other person or entity that assumes the liability contained herein ("successors-in-interest"). Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the USPO for the Central District of California with immediate notice of any name change, business reorganization, sale or purchase of assets not in the usual course of business, divestiture of assets, or similar action materially impacting its ability to pay the sums per the schedule ordered by the Court and set out in Exhibit E. Notice shall be delivered by certified mail to: United States Attorney's Office, Chief of the Criminal Division, 312 N. Spring Street, Suite 1200, Los Angeles, California, 90012. No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement. Defendant shall not engage in any action to seek to evade the obligations and conditions set forth in this agreement.

NATURE OF THE OFFENSES

9. Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true:

a. Beginning on an unknown date, and continuing until on or about September 10, 2014, there was an agreement between two or more persons to:

i. Knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, entering goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

ii. Knowingly and willfully enter and introduce goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542;

iii. Knowingly, willfully, and with the intent to defraud the United States, pass or cause to pass false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

iv. Knowingly cause defendant to fail to file currency transaction reports for a trade or business as required by Title 31, United States Code, Section 5331(a), in violation of Title 31, United States Code, Section 5324(b)(1), and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324(d)(2); and

v. Knowingly and willfully make and subscribe tax returns, which were verified by a written declaration made under penalty of perjury, and which defendant did not believe to be true

and correct as to a material matter, in violation of Title 26, United States Code, Section 7206(1).

b. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c. One of the members of the conspiracy performed at least one overt act in furtherance of the conspiracy.

10. Defendant understands that for defendant to be guilty of the crime charged in Count Two of the Information, that is, International Promotional Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A), the following must be true:

a. Defendant transported or intended to transport money from a place in the United States to or through a place outside the United States; and

b. Defendant acted with the intent to promote the carrying on of specified unlawful activities, namely:

i. Entry of goods into the United States by means of presenting false or fraudulent invoices; and

ii. Passing false and fraudulent papers through customhouse of the United States.

11. Defendant understands that for defendant to be guilty of the crime charged in Count Three of the Information, that is, Entry of Goods Falsely Classified, in violation of Title 18, United States Code, Section 541, the following must be true:

a. Defendant knowingly effected the entry of goods and merchandise; and

b. Defendant did so upon a false classification as to value or by payment of less than the amount of duty legally due.

12. Defendant understands that for defendant to be guilty of the crime charged in Counts Four of the Information, that is, Entry of Goods by Means of False Statements in violation of Title 18, United States Code, Section 542, the following must be true:

a. Defendant knowingly and intentionally submitted a false invoice or other fraudulent document to the customhouse of the United States;

b. Defendant knew that the invoice or other document was false;

c. Defendant acted willfully and with the intent to defraud the United States; and

d. The false invoice had a natural tendency to influence or was capable of influencing action by the United States.

13. Defendant understands that for defendant to be guilty of the crime charged in Count Five of the Information, that is, Passing False and Fraudulent Papers Through Customhouse, in violation of Title 18, United States Code, Section 545, the following must be true:

a. Defendant knowingly passed invoices or other documents through a customhouse of the United States;

b. Defendant knew that the invoices or documents were false and fraudulent;

c. Defendant acted willfully with intent to defraud the United States; and

d. The invoices or documents had a natural tendency to influence, or were capable of influencing, action by the United States.

14. Defendant understands that for defendant to be guilty of the crime charged in Counts Six through Eight of the Information, that is, Failure to File Report of Currency Transaction in a Non-Financial Trade or Business, in violation of Title 31, United States Code, Sections 5331(a)(1) and 5322(b), the following must be true:

a. Defendant was a non-financial trade or business;

b. Defendant, in the course of such trade or business, received more than $10,000 in currency in one transaction (or two or more related transactions);

c. Defendant willfully failed to file a report with the Financial Crimes Enforcement Network as required under 31 U.S.C. § 5331 *et seq.*; and

d. Defendant did so while engaged in a pattern of illegal activity involving more than $100,000 in a 12-month period.

15. As a corporation, defendant may act only through natural persons who are known as its agents. An agent or representative of the corporation possessing adequate authority may bind the corporation by that person's acts, declarations and omissions. In order for a corporate defendant to be guilty of an offense, the elements of the offense must be present as to the corporation, in the form of acts or omissions of agents or employees of the corporation within their authority.

PENALTIES AND RESTITUTION

16. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371, as charged in Count One, is: five years' of probation; a fine of $250,000 or twice the gross gain or gross loss resulting from the

offense, whichever is greatest; and a mandatory special assessment of $400.

17. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(a)(2)(A), as charged in Count Two, is: five years' of probation; a fine of $500,000 or twice the value of the property involved in the offense; and a mandatory special assessment of $400.

18. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 541, as charged in Count Three, is: five years' of probation; a fine of $250,000 or twice the value of the property involved in the offense; and a mandatory special assessment of $400.

19. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 542, as charged in Count Four, is: five years' of probation; a fine of $250,000 or twice the value of the property involved in the offense; and a mandatory special assessment of $400.

20. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 545, as charged in Count Five, is: five years' of probation; a fine of $500,000 or twice the value of the property involved in the offense; and a mandatory special assessment of $400.

21. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 31 U.S.C. §§ 5331(a), 5322(b), as charged in Counts Six through Eight, is: five years' of probation; a fine of $500,000 or twice the value of the property involved in the offense; and a mandatory special assessment of $400.

22. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: five years' probation; a fine of $3,000,000, twice the value of the property, or the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $3,200.

23. Defendant understands and agrees that should the Court accept this plea agreement, defendant will be required to pay restitution as set forth in Exhibit E to the victim(s) of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges. The parties agree that the applicable amount of restitution is approximately $35,227,855.45, as set forth in Exhibit E.

24. Defendant understands and agrees that should the Court accept this plea agreement, the Court will order forfeiture of the property listed in Forfeiture Allegations One through Four of the Information pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982, 28 U.S.C. § 2461(c), and 31 U.S.C. § 5317, in accordance with the schedule set forth in Exhibit E.

SUSPENSION, REVOCATION, AND DEBARMENT

25. Defendant further understands that the convictions in this case may subject defendant to various collateral consequences, including but not limited to, suspension or revocation of any license or status granted to defendant by government agencies. Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

26. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts attached hereto as Exhibit B and incorporated by reference herein, and agree that the statement of facts is sufficient to support pleas of guilty to the charges described in this agreement as well as the sentence, conditions of probation, and all restitution and forfeiture specified in this agreement. The attached statement of facts is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING AGREEMENT

27. Defendant and the USAO agree and stipulate that Chapter 8 of the United States Sentencing Guidelines ("U.S.S.G.") is applicable in this case, including the provisions regarding probation. Defendant understands that in determining whether to accept the agreed-upon plea, the Court is required to consider the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the kinds of sentences and sentencing ranges established under the Sentencing Guidelines.

28. Pursuant to Chapter 8 of the Sentencing Guidelines and the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree that defendant shall be sentenced as follows:

a. Probation: Defendant shall be sentenced to probation for a term of five (5) years, which shall include, but not necessarily be limited to, the following conditions:

i. The conditions of probation set forth in U.S.S.G. §§ 8D1.3(a)-(b) and 8D1.4(b)(1)-(4),(6).

ii. Defendant shall develop and implement an effective anti-money laundering compliance and ethics program consistent with U.S.S.G. § 8B2.1 and in accordance with Exhibit C, which shall be incorporated as additional conditions of defendant's probation.

iii. Defendant agrees to retain an independent, third-party compliance monitor (the "Monitor") to review and assess in a professionally independent and objective fashion the defendant's compliance with anti-money laundering laws, as well as defendant's compliance with the terms of defendant's sentence in this matter. The Monitor's duties, powers, and responsibilities are set forth in Exhibit D, which is incorporated herein. Defendant agrees that it will engage the Monitor within ninety (90) calendar days, as

described in Exhibit D, from the date the Court imposes defendant's sentence.

iv. Defendant, or its successors-in-interest, if applicable, shall provide the USAO and the USPO for the Central District of California with immediate notice of any name change, business reorganization, sale or purchase of assets not in the usual course of business, divestiture of assets, or similar action materially impacting its ability to pay the sums per the schedule ordered by the Court and set out in Exhibit E. Notice shall be delivered by certified mail to: United States Attorney's Office, Chief of the Criminal Division, 312 N. Spring Street, Suite 1200, Los Angeles, California, 90012. No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under the terms of its probation.

v. Forfeiture: As a result of defendant's conduct set forth in the statement of facts attached as Exhibit B, defendant and the USAO agree that certain funds held by the defendant would be forfeitable pursuant to Title 18, United States Code, Section 982. Defendant hereby acknowledges that $82,669,853.63 was involved in criminal violations as set forth in the statement of facts. Pursuant to F.R.C.P. § 11(c)(1)(C), defendant and the USAO agree that, in lieu of a fine, the defendant shall forfeit to the United States the sum of $82,669,853.63, as specified in Exhibit E.

(I) Nothing in this Agreement shall be deemed an agreement by the USAO that the Forfeiture Amount is the maximum penalty that may be imposed in any future prosecution, and the USAO

is not precluded from arguing in any future prosecution that the Court should impose a higher penalty or fine, although the USAO agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine or forfeiture the Court imposes as part of a future judgment.

vi. Fine: The parties agree that in light of the Forfeiture Amount, no fine shall be imposed.

vii. Restitution: Defendant and the USAO agree that the total applicable amount of restitution owed is $35,227,855.45 (the "Restitution Amount"). Defendant shall pay monies owed for the Restitution Amount as outlined in Exhibit E.

viii. Special Assessment: Defendant shall pay a total special assessment of $3,200.

29. Pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii), the parties request that the Court waive the preparation of a presentence report in this matter. The parties further request that the Court sentence defendant at the time the guilty pleas are entered.

30. In the event that the Court defers acceptance or rejection of this specified sentence plea until it has reviewed the presentence report in this case pursuant to Federal Rule of Criminal Procedure 11(c)(3)(A), both defendant and the USAO are free to: (a) supplement the facts stipulated to in this Agreement by supplying relevant information to the USPO and the Court; and (b) correct any and all factual misstatements relating to the calculation of the sentence.

//

//

WAIVER OF CONSTITUTIONAL RIGHTS

31. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF STATUTE OF LIMITATIONS

32. Having been fully advised by defendant's attorney regarding application of the statute of limitations to the offenses to which defendant is pleading guilty, defendant hereby knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have not to be prosecuted for the

offenses to which defendant is pleading guilty because of the expiration of the statute of limitations for those offenses prior to the filing of the Information alleging those offenses; and (b) any defense, claim, or argument defendant could raise or assert that prosecution of the offenses to which defendant is pleading guilty is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation. If, however, the Court does not accept the guilty plea, any and all waivers contained in this paragraph shall be void and unenforceable.

WAIVER OF APPEAL OF CONVICTION

33. Defendant understands that, so long as the court accepts this guilty plea (i.e., sentences defendant in accordance with the agreed-upon sentence described herein), with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

34. Defendant agrees that, provided the Court imposes the sentenced specified in paragraph 28 above, defendant gives up the right to appeal any portion of the sentence.

35. The USAO agrees that, provided the Court imposes the sentence specified in paragraph 28 above, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

36. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant (i) agrees that the agreed-to factual basis set forth in Exhibit B, and any evidence derived from such factual basis, shall be admissible against defendant in any such action against defendant and any third-party; and (ii) defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the agreed-to factual basis set forth in Exhibit B, and any evidence derived from such factual basis, should be suppressed or are inadmissible; and (c) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

37. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

38. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement.

c. The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d. In any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the agreed-to statement of facts set forth in Exhibit B, and any evidence derived from the factual basis, should be suppressed or is inadmissible. Defendant agrees that: (1) any statement made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (2) the agreed to factual basis statement in this agreement; and (3) any evidence derived from such statements, shall be admissible against defendant in any such action.

39. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

40. Defendant understands that the Court and the USPO are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or the agreed-upon sentence. Defendant understands that the Court will determine the facts and will decide for itself whether to accept and agree to be bound by this agreement.

41. Should the Court require the preparation of a presentence report in this matter, defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the USPO and the Court, and (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and assessment of the agreed-upon sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the USPO and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

NO ADDITIONAL AGREEMENTS

42. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

43. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

LUCY B. JENNINGS — July 6, 2020 — Date
Assistant United States Attorney

NAME: SANG BUM NOH — 7/6/2020 — Date
TITLE: President
Authorized Representative of
AMBIANCE U.S.A., INC.

BENJAMIN GLUCK, ESQ. — July 6, 2020 — Date
Attorney for Defendant
AMBIANCE U.S.A., INC.

CERTIFICATION OF DEFENDANT

I have been authorized by defendant AMBIANCE U.S.A., INC. ("defendant"), to enter into this agreement on defendant's behalf. I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with outside counsel for AMBIANCE U.S.A., INC. ("defendant's attorney"). I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter, and I am pleading guilty on behalf of defendant because defendant is guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

[signature] 7/6/2020
Date

NAME: SANG BUM NOH

TITLE: President

Authorized Representative of
AMBIANCE U.S.A., INC.

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am AMBIANCE U.S.A., INC.'s attorney in the matter covered by this agreement. In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company's owners. Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.

I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of its rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

BENJAMIN GLUCK, ESQ.
Attorney for Defendant
AMBIANCE U.S.A., INC.

July 6, 2020
Date

# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Plea Agreement for Defendant COMPANY re: United States of America v. Company and Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION and DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Information re: United States of America v. Company and Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION and DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit B Statement of Facts re: United States of America v. Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

# CERTIFICATION OF TRANSLATION and DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit C Compliance and Ethics Program re: United States of America v. Company and Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION
# and
# DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit D Corporate Monitor Provisions re: United States of America v. Company and Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 18, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# CERTIFICATION OF TRANSLATION and DECLARATION

State of California )
) S. S.
Los Angeles County )

I, Soomi Ko, the undersigned, declare under penalty of perjury that I am a duly certified Korean Court Interpreter approved by the United States District Courts, certified by the State of California and the Los Angeles County Superior Courts, with competent knowledge of Korean and English, and that I have truthfully and correctly translated the **Exhibit E Payment Terms and Schedule re: United States of America v. Individual** from English to Korean and that the said translation is, to the best of my knowledge and belief, a true and correct translation. I further declare under penalty of perjury that I am neither counsel for, related to, nor employed by any of the parties, and that I have no financial or other interest in the outcome of any action related to this translation. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2020

Soomi Ko
California State Certified Court Interpreter
#300732
(213) 999-7848(Cell)
soomi@komartin.com
www.komartin.com

Ko & Martin Certified Interpreters and Translators
Specializing in Korean and Chinese Languages

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMBIANCE U.S.A., INC., and SANG BUM NOH, aka "Ed Noh,"<br><br>Defendants. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1956(a)(2)(A): International Promotional Money Laundering; 18 U.S.C. § 541: Entry of Goods Falsely Classified; 18 U.S.C. § 542: Entry of Goods by Means of False Statements; 18 U.S.C. § 545: Passing False and Fraudulent Papers Through Customhouse; 31 U.S.C. §§ 5331(a)(1), 5322(b): Failure to File Report of Currency Transaction in a Non-Financial Trade or Business; 26 U.S.C. § 7206(1): Making and Subscribing to a False Tax Return; 18 U.S.C. §§ 545, 981, and 982, 26 U.S.C. § 7301, 28 U.S.C. § 2451, 31 U.S.C. § 5317: Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Structure of Ambiance U.S.A, Inc.

1. Defendant AMBIANCE U.S.A., INC., doing business as "Ambiance Apparel" ("defendant AMBIANCE"), was incorporated in 1999

in the State of California, was located at 2465 East 23rd Street, Los Angeles, California. Defendant AMBIANCE was a trade or business operating as an importer and exporter of textiles and garments from China, Vietnam, Cambodia, and elsewhere, with large customers including retail apparel chains, and smaller customers including individuals who owned small businesses, mostly in Mexico.

2. Defendant SANG BUM NOH, also known as "Ed Noh" ("defendant NOH"), was the key manager and day-to-day operator of defendant AMBIANCE.

3. Coconspirator 1 was a Certified Public Accountant employed by defendant AMBIANCE.

Importation Process of Foreign Goods

4. The United States Department of Homeland Security, Customs and Border Protection ("CBP") was an agency responsible for administering and enforcing the customs laws of the United States and collecting the duties, taxes, and fees owed to the United States by the importers of merchandise.

5. When a shipment of foreign goods reached the United States, the importer or consignee was required to file entry documents for the merchandise, which required specific information relating to the imported goods, such as an accurate description of the merchandise, the purchase price of the merchandise, the terms of sale, and all costs and services determined by law to be dutiable. Entry documents could be filed electronically and included documents such as invoices, a packing list, a bill of lading, and CBP forms, such as Form 7501 (Entry Summary), which contained the final invoice purchase price. CBP relied on entry documents to assess the proper duties and taxes for the imported merchandise.

Ownership of AMBIANCE and Tax Structure

6. The Internal Revenue Service of the United States Treasury Department ("IRS") was an agency responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

7. Defendant AMBIANCE was a subchapter S corporation. As such, its gross sales and net income were reported on a Form 1120S, United States Income Tax Return for an S Corporation, which was filed with the IRS. Taxable income generated by defendant AMBIANCE was reported on an IRS Schedule K-1 that was given to the taxpayer owner, defendant NOH's spouse. The income "flowed through" the corporation to the owner without being taxed at the corporate level. Instead, the net income was reported as such by the owner, defendant NOH's spouse, who was subject to federal income tax, on her individual income tax returns filed jointly with her husband, defendant NOH, on Form 1040, U.S. Individual Income Tax Return.

8. Defendant AMBIANCE used an accounting software system known as "LAMBS" to record its sales, receipts of payment, and accounts receivable. Defendant AMBIANCE and Coconspirator 1 also used LAMBS to compile end-of-year information for tax purposes, which Coconspirator 1 forwarded to the accountants/tax preparers for defendant AMBIANCE to use in preparing defendant AMBIANCE's annual corporate tax returns and the individual joint tax return for defendant NOH.

Currency Reporting Requirements

9. Under federal law, whenever a nonfinancial trade or business, such as defendant AMBIANCE, received over $10,000 in currency in one transaction or two or more related transactions that occur within one year, the business was required to file a notice

with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300") no later than 15 days after the transaction over $10,000.

10. These Introductory Allegations are incorporated into each Count of this Information.

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the United States Attorney, but no later than January 1, 2010, and continuing until on or about September 10, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, conspired with each other to:

1. Knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, entering goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 1956(a)(2)(A);

2. Knowingly and willfully enter and introduce goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542;

3. Knowingly, willfully, and with the intent to defraud the United States, pass or cause to pass false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

4. Knowingly cause defendant AMBIANCE to fail to file currency transaction reports as required by Title 31, United States Code, Section 5331(a), and the regulations promulgated thereunder, in

violation of Title 31, United States Code, Section 5324(b)(1) and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324(d)(2); and

5. Knowingly and willfully make and subscribe tax returns, which were verified by a written declaration made under penalty of perjury, and which defendant NOH did not believe to be true and correct as to a material matter, in violation of Title 26, United States Code, Section 7206(1).

B. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

CUSTOMS FRAUD AND RELATED MONEY LAUNDERING

1. Defendants AMBIANCE and NOH would order garments from manufacturers in China, Vietnam, Cambodia, and elsewhere for defendant AMBIANCE’s stores in Los Angeles.

2. At defendants AMBIANCE and NOH’s direction, the manufacturers would prepare two invoices for each order: (a) one invoice that reflected a portion of the value that was later declared to CBP as the value of the imports; and (b) a second, supplemental invoice that reflected the remaining balance of the true cost of the garments to defendant AMBIANCE.

3. Defendant AMBIANCE’s employees, at the direction of defendant NOH, would forward the false, undervalued invoice to defendant AMBIANCE’s customs broker, who would transmit the information to CBP as proof of the importation price of the

merchandise for purposes of determining the tariff due on the importation.

4. Defendants AMBIANCE and NOH would pay the amount on the false invoice to the manufacturer via letter of credit.

5. Defendants AMBIANCE and NOH would pay the remainder owed on the second, supplemental invoice to the manufacturer via wire transfer.

6. Defendants AMBIANCE and NOH would thereby underpay customs tariffs by reporting only a portion of the value of the merchandise it imported.

7. In total, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, submitted false invoices that resulted in an undervaluation of imported merchandise of approximately $82,669,853, which caused approximately $17,169,492.72 in unpaid tariffs owed to CBP by defendant AMBIANCE.

8. As part of this conspiracy, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, sent approximately 438 individual wire transfers from defendant AMBIANCE’s bank accounts in Los Angeles, California to defendant AMBIANCE’s suppliers’ bank accounts outside of the United States, all of which were sent to promote the importation of the undervalued merchandise.

<u>FAILURE TO FILE CURRENCY TRANSACTION REPORTS (FORM 8300s)</u>

9. Defendant AMBIANCE would receive large amounts of United States currency exceeding $10,000 as payment for open invoices from its customers.

10. Defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, would fail to file reports of currency transactions exceeding $10,000 to the Internal Revenue Service on a Form 8300 as required by law.

11. Through this conspiracy, defendants AMBIANCE and NOH, together with co-conspirators known and unknown to the United States Attorney, knowingly failed to file Form 8300s for approximately $11,103,123 worth of currency received from approximately 364 individual cash sales transactions that each exceeded $10,000.

FALSE STATEMENT IN FILED TAX RETURNS

12. With defendant NOH's knowledge and approval, Coconspirator 1 would reduce the value of cash sales received by defendant AMBIANCE so that sales reported were lower than the true sales amounts received by defendant AMBIANCE.

13. With defendant NOH's knowledge and approval, Coconspirator 1 would send false sales reports to defendant AMBIANCE's outside accountants for purposes of preparing defendant AMBIANCE's and defendant NOH's annual tax returns.

14. Defendant NOH would thereby cause the outside accountants to omit the deleted cash sales from the schedule K-1, Shareholder's Share of Income, Deductions, and Credits, issued to the sole shareholder, defendant NOH's spouse.

15. As a result, defendant NOH would knowingly fail to include the unreported sales on his tax returns and would sign, subscribe, swear to, and file those returns knowing that they omitted substantial amounts of income through cash sales and that the returns contained material misrepresentations about their total income.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act Nos. 1 through 10: On or about the following dates, defendants AMBIANCE and NOH caused the following amounts to be wire transferred from an account at a financial institution in the Central District of California, to an account at a financial institution located outside of the United States:

| OVERT ACT | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|---|
| 1 | 10/3/13 | $32,912.16 | East West Bank | Bank of China Deqing Branch, China | Zhejiang Cathaya Huameng Knitting Co., Ltd. |
| 2 | 10/4/13 | $228,614.40 | East West Bank | Bank of China Suzhou Branch, China | Suzhou Hengsheng I/E Co., Ltd. |
| 3 | 11/1/13 | $317,793.96 | East West Bank | Bank of China Hangzhou Binjiang sub-Branch, China | Hangzhou Xinyi Garments Co., Ltd. |
| 4 | 11/6/13 | $272,513.33 | East West Bank | Woori Bank-Seoul 203, Hoehyon Dong 1-GA,Chung-Gu Seoul, Korea | Alim Intertex Co., Ltd. |

| OVERT ACT | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|---|
| 5 | 11/7/13 | $230,288.25 | East West Bank | Bank of Communications Taizhou Branch, China | Jiangsu Weina Fashion Co., Ltd |
| 6 | 11/12/13 | $165,720.84 | East West Bank | Shanghai Pudong Development Bank Suzhou, China | Jiangyin Hongxin Garment Making Co., Ltd. |
| 7 | 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |
| 8 | 11/15/13 | $265,085.45 | East West Bank | Hongkong and Shanghai Banking Hong Kong | Super Wonder World Wide Ltd. |
| 9 | 4/21/14 | $185,452.68 | HSBC | HSBC Hong Kong | Super Wonder World Wide Ltd. |
| 10 | 6/5/14 | $55,072.08 | HSBC | One Bank Limited 97, Gulshan Avenue Dhaka Bangladesh | Chunji Knit Ltd. |

Overt Act Nos. 11 through 20: On or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, knowingly and willfully entered and introduced imported merchandise, namely, garments from China, into the commerce of the United States by means of materially false and fraudulent invoices and statements, without reasonable cause to

believe the truth of such statements. Specifically, defendants AMBIANCE and NOH stated, and caused to be stated, that the following false and fraudulent invoices represented the total value of the merchandise imported into the United States, whereas, in fact, as defendants AMBIANCE and NOH then knew, the false invoices undervalued the merchandise imported into the United States in amounts as follows:

| OVERT ACT | ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|---|---|
| 11 | 9/3/2013 | HE801385544 | $49,368 | $32,912.16 | $9,281.23 |
| 12 | 9/17/2013 | HE801388571 | $77,340 | $76,865.76 | $24,597.04 |
| 13 | 9/22/2013 | HE801390247 | $84,313 | $56,208.36 | $8,685.09 |
| 14 | 9/26/2013 | HE801390684 | $310,034 | $205,587.12 | $32,893.94 |
| 15 | 10/7/2013 | HE801393688 | $168,470 | $72,201.60 | $20,360.85 |
| 16 | 10/11/2013 | HE801394082 | $148,631 | $99,420.96 | $23,227.71 |
| 17 | 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |
| 18 | 10/20/2013 | HE801396525 | $250,609 | $167,072.64 | $44,942.54 |
| 19 | 4/9/2014 | HE801439994 | $205,094 | $87,897.60 | $9,492.94 |
| 20 | 6/25/2014 | HE801457814 | $128,689 | $55,072.08 | $15,530.33 |

Overt Act Nos. 21 through 30: On or about the following dates, defendants AMBIANCE and NOH, together with others known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below:

| OVERT ACT | ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|---|
| 21 | 9/3/2013 | Forms 7501 and 3461, bearing entry number HE801385544, falsely declaring that total entered value of the merchandise was $49,368 instead of the true value paid of $82,280.40. |
| 22 | 9/17/2013 | Forms 7501 and 3461, bearing entry number HE801388571, falsely declaring that total entered value of the merchandise was $77,340 instead of the true value paid of $154,206. |
| 23 | 9/22/2013 | Forms 7501 and 3461, bearing entry number HE801390247, falsely declaring that total entered value of the merchandise was $84,313 instead of the true value paid of $140,520.90. |
| 24 | 9/26/2013 | Forms 7501 and 3461, bearing entry number HE801390684, falsely declaring that total entered value of the merchandise was $310,034 instead of the true value paid of $515,621.52. |
| 25 | 10/7/2013 | Forms 7501 and 3461, bearing entry number HE801393688, falsely declaring that total entered value of the merchandise was $168,470 instead of the true value paid of $240,672. |
| 26 | 10/11/2013 | Forms 7501 and 3461, bearing entry number HE801394082, falsely declaring that total entered value of the merchandise was $148,631 instead of the true value paid of $248,052. |
| 27 | 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. |
| 28 | 10/20/2013 | Forms 7501 and 3461, bearing entry number HE801396525, falsely declaring that total entered value of the merchandise was $139,992 |

| OVERT ACT | ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|---|
| | | instead of the true value paid of $232,956. |
| 29 | 4/9/2014 | Forms 7501 and 3461, bearing entry number HE801439994, falsely declaring that total entered value of the merchandise was $205,094 instead of the true value paid of $323,052. |
| 30 | 6/25/2014 | Forms 7501 and 3461, bearing entry number HE801457814, falsely declaring that total entered value of the merchandise was $128,689 instead of the true value paid of $183,760.92. |

Overt Act Nos. 31 through 36: On or about the following dates, defendants AMBIANCE and NOH, and others known and unknown to the United States Attorney, received the following amounts of currency over $10,000 without filing reports of currency transactions:

| OVERT ACT | PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|---|
| 31 | 11/15/2012 | $14,193.00 | 67779 | A.R. |
| 32 | 11/21/2012 | $17,610.00 | 68691 | A.R. |
| 33 | 1/11/2013 | $33,900.00 | 74642 | A.R. |
| 34 | 1/24/2013 | $19,344.00 | 76232 | A.R. |
| 35 | 3/15/2013 | $20,535.00 | 83280 | A.R. |
| 36 | 4/5/2013 | $34,915.00 | 86452 | A.R. |

Overt Act No. 37: In May 2012, with defendant NOH's knowledge and approval, Coconspirator 1 created a false sales journal for 2011, omitting approximately $13,422,908 in cash sales, and reporting instead total store sales of only $22,477,743.29, instead of the correct total of $36,439,102.

<u>Overt Act No. 38:</u> On May 9, 2012, defendant NOH caused this falsified 2011 sales journal to be sent to outside accountants for defendant AMBIANCE, to be used to prepare financial statements and tax returns for 2011.

<u>Overt Act No. 39:</u> On October 8, 2012, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2011.

<u>Overt Act No. 40:</u> In June 2013, with defendant NOH's knowledge, Coconspirator 1 created a false sales journal for 2012, omitting approximately $6,662,641 in cash sales, and reporting instead total store sales of only $8,477,795.77 instead of the true and complete sales report amount of $15,141,772.87.

<u>Overt Act No. 41:</u> On June 4, 2013, defendant NOH caused the falsified 2012 sales journal to be sent to outside accountants for defendant AMBIANCE, to be used to prepare financial statements and tax returns for 2012.

<u>Overt Act No. 42:</u> On October 9, 2013, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2012.

COUNT TWO

[18 U.S.C. § 1956(a)(2)(A)]

[DEFENDANT AMBIANCE]

On or about November 14, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. knowingly transferred monetary instruments and funds, namely, $278,262.79, from an account at a financial institution in the Central District of California, to an account at a financial institution outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely:

1. Entry of goods falsely classified as to value and payment of less than the amount of duty legally due, in violation of Title 18, United States Code, Section 541;

2. Entry of goods into the United States by means of false and fraudulent statements, in violation of Title 18, United States Code, Section 542; and

3. Passing false and fraudulent documents through a United States customhouse, in violation of Title 18, United States Code, Section 545;

through the following transaction:

| DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|
| 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |

COUNT THREE

[18 U.S.C. §§ 541, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, knowingly effected, and willfully caused to be effected, the entry of goods and merchandise, upon a false classification as to their value and by payment of less than the amount of duty legally due, namely:

| ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|---|
| 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |

COUNT FOUR

[18 U.S.C. §§ 542, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, entered and introduced, and willfully caused to be entered and introduced, imported merchandise, namely, garments from China, into the commerce of the United States by means of materially false and fraudulent invoices and statements, without reasonable cause to believe the truth of such statements.  Specifically, defendant AMBIANCE stated, and willfully caused to be stated, that the false and fraudulent invoice represented the total value of the merchandise imported into the United States, whereas, in fact, as defendant AMBIANCE then knew and believed, the false invoice undervalued the merchandise imported into the United States in the amount as follows:

| **ENTRY DATE** | **ENTRY NO.** | **DECLARED VALUE (FALSE INVOICE)** | **UNDER-VALUATION (SECOND PAYMENT)** | **RESULTING DUTY NOT PAID** |
|---|---|---|---|---|
| 10/15/2013 | HE801394041 | $139,992 | $92,964.00 | $29,748.48 |

COUNT FIVE

[18 U.S.C. §§ 545, 2(b)]

[DEFENDANT AMBIANCE]

On or about October 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. and others known and unknown to the United States Attorney, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below, in order to influence action by the United States:

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
| --- | --- |
| 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. |

COUNTS SIX THROUGH EIGHT

[31 U.S.C. §§ 5331(a), 5322(b)]

[DEFENDANT AMBIANCE]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant AMBIANCE U.S.A., INC. knowingly and willfully failed to file a report of domestic currency transaction over $10,000 in a trade or business, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| COUNT | PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|---|
| SIX | 10/30/2013 | $53,010.00 | 104558 | A.R. |
| SEVEN | 11/26/2013 | $27,930.00 | 122133 | A.R. |
| EIGHT | 04/15/2014 | $33,000.00 | 136869 | A.R. |

COUNT NINE

[26 U.S.C. § 7206(1)]

[DEFENDANT NOH]

On or about October 8, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant SANG BUM NOH, also known as “Ed Noh,” a resident of Los Angeles County, California, willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2011, which was prepared and signed in the Central District of California, filed with the Internal Revenue Service, and which defendant NOH verified as true, correct, and complete by a written declaration made under penalty of perjury, and which tax return defendant NOH did not believe to be true and correct as to every material matter, in that the return falsely omitted $13,422,908 in taxable income from Ambiance, U.S.A., Inc. to defendant NOH and his spouse, when, in fact, as defendant NOH then knew, the amount of taxable income was substantially higher.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in any such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION THREE

[18 U.S.C. §§ 982 and 545]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Three through Five of this Information.

2. The defendant, if so convicted, shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b) Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been

transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[31 U.S.C. § 5317]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Six through Eight of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All property, real or personal, involved in any such offense and any property traceable thereto; and

(b) To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p) and Title 31, United States Code, Section 5317(c)(1)(B), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding, or any portion thereof; (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FIVE

[26 U.S.C. § 7301]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Nine of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property sold or removed by the convicted defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

(b) All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

(c) All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

(d) All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

(e) Any property (including aircraft, vehicles, vessels, or

draft animals) used to transport or for the deposit or concealment of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

(f) To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

//

//

//

//

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics, Money Laundering, & Racketeering Section

LUCY B. JENNINGS
Assistant United States Attorney
International Narcotics, Money Laundering, & Racketeering Section

# EXHIBIT C

# EXHIBIT C

## COMPLIANCE AND ETHICS PROGRAM

Should the Court impose the sentence agreed to in this Agreement, then in a manner consistent with all of its obligations under this Agreement, Ambiance U.S.A., Inc., doing business as Ambiance Apparel ("Ambiance" or the "Company"), agrees to implement a compliance and ethics program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate, books, records, and accounts; and (b) a rigorous anti-money laundering ("AML") compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of applicable AML laws and regulations, including the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.* (collectively, "AML laws"). At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing, internal controls, compliance code, policies, and procedures:

*High-Level Commitment*

1. The Company will ensure that its owners, executives, and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of AML laws and its compliance code.

*Policies and Procedures*

2. The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of AML laws, which shall be memorialized in a written compliance code.

3. The Company will develop and promulgate written AML compliance policies and procedures designed to reduce the prospect of violations of applicable laws and the Company's compliance code, and the Company will take appropriate measures to encourage and support the observance of its AML policies and procedures by personnel at all levels of the Company. The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the Company. Such policies and procedures will address, at a minimum: (1) customer identification and due diligence requirements; (2) reporting obligations for cash payments; and (3) trade transaction monitoring.

4. The Company will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure the maintenance of fair and accurate books, records, and accounts.

*Periodic Risk-Based Review*

5. The Company will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of the Company, in particular the money laundering risks facing the Company, including, but not limited to, identification and due diligence of its cash-based customers, exposure to the "Black Market Peso Exchange" based on the Company's location and sector of operation, and the process by which merchandise is paid for and declared to authorities.

6. The Company shall review its AML compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking

into account developments in the field and evolving international and industry standards.

*Proper Oversight and Independence*

7. The Company will assign responsibility to one or more senior managers or executives of the Company for the implementation and oversight of the Company's AML compliance code, policies, and procedures. Such senior manager(s) or executive(s) shall have direct reporting lines to Ambiance's owners, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

8. The Company will implement mechanisms designed to ensure that its AML compliance code, policies, and procedures are effectively communicated to all officers, executives, employees and, where necessary, agents (such as customs brokers) and business partners. These mechanisms shall include: (a) periodic training for all officers, executives, employees involved in audit, sales, legal, compliance, accounting, finance, or other positions that otherwise pose AML-related risks to the Company and, where necessary and appropriate, agents and business partners; (b) corresponding certifications by all such individuals certifying compliance with the training requirements.

9. The Company will establish an effective system for providing guidance and advice to individual on complying with the Company's AML compliance program.

*Internal Reporting and Investigation*

10. The Company will establish and maintain an effective system for internal reporting concerning potential violations of AML laws or the Company's ethics and compliance

code, policies, and procedures.

11. The Company will establish and maintain an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of AML laws or the Company's ethics and compliance code, policies, and procedures.

*Enforcement and Discipline*

12. The Company will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

13. The Company will institute appropriate disciplinary procedures to address, among other things, violations of AML laws and the Company's ethics and compliance code, policies, and procedures by the Company's executives, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee.

14. The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall AML compliance program is effective.

# EXHIBIT B

**EXHIBIT B**

**STATEMENT OF FACTS**

Defendant acknowledges that if this case proceeded to trial, the United States would prove the following facts, among others, which defendant acknowledges to be true, beyond a reasonable doubt:

## I. BACKGROUND OF AMBIANCE

1. On or about October 21, 1999, Ambiance, U.S.A., Inc. was incorporated in the State of California. On or about February 8, 2012, Apparel Line U.S.A., Inc. was incorporated in the State of California. For all times relevant to this statement of facts, both Ambiance U.S.A., Inc., and Apparel Line U.S.A., Inc. were doing business as "Ambiance Apparel," and located at 2465 East 23rd Street, Los Angeles, California 90058 (hereinafter, collectively, "AMBIANCE").

2. AMBIANCE was a garment importation and wholesale distribution business that purchased goods abroad, mostly from China, and distributed those goods to businesses in the Los Angeles area and elsewhere.

3. Defendant SANG BUM NOH, also known as "Ed Noh" ("defendant NOH") was the owner and manager of AMBIANCE and was responsible for running the business on a day-to-day basis, which included placing orders with AMBIANCE's suppliers, managing shipment of such orders, and directing payments to suppliers.

## II. CUSTOMS FRAUD AND RELATED MONEY LAUNDERING

4. At all times relevant for these statement of facts, the United States Department of Homeland Security, Customs and Border Protection ("CBP") was an agency responsible for administering and enforcing the customs laws of the United States and collecting the duties, taxes, and fees owed to the United States by the importers of merchandise. When a shipment of foreign goods reached the United States, the importer or consignee was required to file entry documents for the merchandise, which provide specific information relating to the imported goods, such as an accurate description of the merchandise, the invoice purchase price of the merchandise, the terms of sale, and all costs and services determined by law to be dutiable. CBP relied on entry documents to assess the proper duties and taxes for the imported merchandise.

5. Beginning on a date unknown, and continuing until September 10, 2014, in Los Angeles County, within the Central District of California, AMBIANCE, defendant NOH, and others known and unknown, engaged in a scheme to commit customs fraud and launder money by submitting false and fraudulent invoices that reflected only a portion of the merchandise's true importation value to CBP. These partial invoices were submitted at defendant NOH's direction and with his knowledge in order to avoid paying the full amount of tariffs owed to the United States by AMBIANCE for its importations. This scheme worked as follows:

a. AMBIANCE and defendant NOH would order garments from manufacturers in China, Vietnam, Cambodia, and elsewhere.

b. At defendant NOH's direction, the manufacturers would prepare two invoices for each order:

i. One invoice that reflected only a portion of the value of the order, usually 60 to 70 percent of the overall price, which was later provided to CBP to determine the value of the imports ("Invoice #1"). Invoice #1 was paid by letter of credit and would reflect lower unit prices for the imported goods, thereby supporting a lower overall total value for those imports.

ii. A second, invoice, to be paid by wire transfer, that reflected the remaining balance of the true cost of the shipment to AMBIANCE (Invoice #2").

c. Through this split invoicing process (Invoice #1 and Invoice #2), AMBIANCE was able to conceal the true amount of the imports on which AMBIANCE was required to pay tariffs.

d. At defendant NOH's direction, the partial invoice, Invoice #1, would be sent to AMBIANCE's customs broker, who would transmit the information to CBP as proof of the merchandise's importation price for purposes of determining the tariff due on the importation. By reporting only a portion of the true value of its imports, AMBIANCE and defendant NOH artificially reduced the value of the imports used to calculate the tariffs owed by AMBIANCE for this merchandise.

e. To assist AMBIANCE's employees in properly calculating the amount by which to reduce each invoice that was

sent to CBP (by reducing the unit prices of each item of merchandise), AMBIANCE and defendant NOH maintained an “Undervalue Calculator” on its computer systems, which allowed AMBIANCE employees to falsify the value of the importations and the amount of duty owed on those importations.

f. At defendant NOH’s direction, AMBIANCE paid its suppliers the amount listed on Invoice #1 through a Letter of Credit, which was referenced in the entry documents provided to CBP. Later, defendant NOH authorized a separate wire transfer to be sent to the supplier to cover the remaining costs owed for the garments as outlined in Invoice #2.

6. From January 1, 2010, through September 10, 2014, AMBIANCE knowingly undervalued importations into the United States. In total, this scheme resulted in the knowing undervaluation of imports by approximately $82,669,853.00 and approximately $17,169,492.72 in unpaid tariffs/loss of revenue owed to CBP by AMBIANCE. After interest accrued through September 10, 2014, which totaled $1,251,950.69, CBP’s resulting loss was $18,421,443.41.

7. Through this scheme, AMBIANCE and defendant NOH knowingly, willfully, and with the intent to defraud the United States: (1) caused garments to be entered in the United States based on a false classification as to the garments’ value and by payment of less than the amount of duty owed; (2) introduced garments into the commerce of the United States by means of materially false and fraudulent invoices; and (3) smuggled goods

into the United States by passing such false invoices through a United States customhouse.

8. On or about the following dates, AMBIANCE and defendant NOH caused the following shipments to be introduced into the United States by means of false and fraudulent invoices, which resulted in the underpayment of duties owed to the United States:

| **ENTRY DATE** | **FALSE AND FRAUDULENT DOCUMENT** | **AMOUNT UNDERVALUED (SECOND PAYMENT)** | **RESULTING DUTY NOT PAID** |
|---|---|---|---|
| 9/3/2013 | Forms 7501 and 3461, bearing entry number HE801385544, falsely declaring that total entered value of the merchandise was $49,368 instead of the true value paid of $82,280. | $32,912.16 | $9,281.23 |
| 9/17/2013 | Forms 7501 and 3461, bearing entry number HE801388571, falsely declaring that total entered value of the merchandise was $77,340 instead of the true value paid of $154,206. | $76,865.76 | $24,597.04 |
| 9/22/2013 | Forms 7501 and 3461, bearing entry number HE801390247, falsely declaring that total entered value of the merchandise was $84,313 instead of the true value paid of $140,520. | $56,208.36 | $8,685.09 |
| 9/26/2013 | Forms 7501 and 3461, bearing entry number HE801390684, falsely | $205,587.12 | $32,893.94 |

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|
| | declaring that total entered value of the merchandise was $310,034 instead of the true value paid of $515,621. | | |
| 10/7/2013 | Forms 7501 and 3461, bearing entry number HE801393688, falsely declaring that total entered value of the merchandise was $168,470 instead of the true value paid of $240,672. | $72,201.60 | $20,360.85 |
| 10/11/2013 | Forms 7501 and 3461, bearing entry number HE801394082, falsely declaring that total entered value of the merchandise was $148,631 instead of the true value paid of $248,052. | $99,420.96 | $23,227.71 |
| 10/15/2013 | Forms 7501 and 3461, bearing entry number HE801394041, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. | $92,964.00 | $29,748.48 |
| 10/20/2013 | Forms 7501 and 3461, bearing entry number HE801396525, falsely declaring that total entered value of the merchandise was $139,992 instead of the true value paid of $232,956. | $167,072.64 | $44,942.54 |
| 4/9/2014 | Forms 7501 and 3461, bearing entry number HE801439994, falsely | $87,897.60 | $9,492.94 |

| ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT | AMOUNT UNDERVALUED (SECOND PAYMENT) | RESULTING DUTY NOT PAID |
|---|---|---|---|
| | declaring that total entered value of the merchandise was $205,094 instead of the true value paid of $323,052. | | |
| 6/25/2014 | Forms 7501 and 3461, bearing entry number HE801457814, falsely declaring that total entered value of the merchandise was $128,689 instead of the true value paid of $183,760. | $55,072.08 | $15,530.33 |

9. AMBIANCE and defendant NOH promoted this scheme by wire transferring payment for the balances of Invoice #2 (for each order) to the suppliers. Specifically, AMBIANCE and defendant NOH caused approximately 438 individual wire transfers to be sent from AMBIANCE's bank accounts in Los Angeles, California to AMBIANCE's suppliers' bank accounts in China and elsewhere. In total, AMBIANCE and defendant NOH transferred a total of $82,669,853.63 from AMBIANCE's bank accounts in the United States to AMBIANCE's suppliers' bank accounts located outside of the United States, which corresponded to the undervalued amount of the imported merchandise.

10. On or about the following dates, AMBIANCE and defendant NOH caused the following amount to be wire transferred from an account at a financial institution in Los Angeles,

California, to an account at a financial institution outside of the United States:

| DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK | BENEFICIARY BANK, LOCATION | BENEFICIARY PAID |
|---|---|---|---|---|
| 10/3/13 | $32,912.16 | East West Bank | Bank of China Deqing Branch, China | Zhejiang Cathaya Huameng Knitting Co., Ltd. |
| 10/4/13 | $228,614.40 | East West Bank | Bank of China Suzhou Branch, China | Suzhou Hengsheng I/E Co., Ltd. |
| 11/1/13 | $317,793.96 | East West Bank | Bank of China Hangzhou Binjiang sub-Branch, China | Hangzhou Xinyi Garments Co., Ltd. |
| 11/6/13 | $272,513.33 | East West Bank | Woori Bank-Seoul 203, Hoehyon Dong 1-GA,Chung-Gu Seoul, Korea | Alim Intertex Co., Ltd. |
| 11/7/13 | $230,288.25 | East West Bank | Bank of Communications Taizhou Branch, China | Jiangsu Weina Fashion Co., Ltd |
| 11/12/13 | $165,720.84 | East West Bank | Shanghai Pudong Development Bank Suzhou, China | Jiangyin Hongxin Garment Making Co., Ltd. |
| 11/14/13 | $278,262.79 | East West Bank | Zhejiang Pinghu Rural Cooperative Bank, Pinghu, China | Pinghu Huabiou Knitting Garments Co., Ltd |
| 11/15/13 | $265,085.45 | East West Bank | Hongkong and Shanghai Banking Hong Kong | Super Wonder World Wide Ltd. |
| 4/21/14 | $185,452.68 | HSBC | HSBC Hong Kong | Super Wonder World Wide Ltd. |

| 6/5/14 | $55,072.08 | HSBC | One Bank Limited 97, Gulshan Avenue Dhaka Bangladesh | Chunji Knit Ltd. |
|---|---|---|---|---|

## III. CASH SALES

11. Beginning on a date unknown, and continuing to at least July 2014, in Los Angeles County, within the Central District of California, AMBIANCE, defendant NOH, and others known and unknown, engaged in a scheme to conceal sales of AMBIANCE merchandise paid in cash. As part of the scheme, AMBIANCE and defendant NOH: (1) failed to file reports of the receipt of cash over $10,000 in a non-financial trade or business; (2) concealed cash sales through a method of decreasing the sales recorded in the official accounting records of the business; and (3) failed to report income generated from cash sales to external accountants, which resulted in fraudulent tax returns filed by AMBIANCE and defendant NOH.

### A. FAILURE TO REPORT CASH SALES OVER $10,000

12. Under federal law, whenever a non-financial trade or business, such as AMBIANCE, receives over $10,000 in currency in one transaction or in two or more related transactions that occur within one year, the business must file a notice with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300"). This form must be filed no later than 15 days after the transaction over $10,000. In July 2012, defendant NOH was

notified of the requirement to file the Form 8300 by Ambiance's external accountants. Defendant NOH admits that he did understand those requirements no later than July 2012.

13. In May 2013, defendant NOH was notified again of the requirement to file the Form 8300. Specifically, in May 2013, defendant NOH met with Department of Homeland Security Special Agents at AMBIANCE's store and was notified that AMBIANCE was required file Form 8300 for all currency transactions exceeding $10,000. During this meeting, defendant NOH signed an acknowledgement of law form as the owner of AMBIANCE, indicating that he understood the reporting requirements.

14. Beginning no later than July 2012, and continuing to at least July 2014, AMBIANCE employees received United States currency exceeding $10,000 per transaction as payment for open invoices of AMBIANCE's customers. Specifically, between July 3, 2012 and July 2, 2014, AMBIANCE received approximately 364 payments of cash exceeding $10,000 for each transaction. Defendant NOH knew about at least some of these transactions.

15. AMBIANCE, defendant NOH, together with others known and unknown, failed to file or cause the filing of reports of currency transactions for a non-financial trade or business (Form 8300) for  of these 364 transactions. In total, these sales exceeded $11,103,122 worth of currency received by AMBIANCE.

16. As examples, on or about the following dates, AMBIANCE and its employees received currency over $10,000 as payment for customer orders but failed to file reports of currency

transactions:

| PAID DATE | AMOUNT RECEIVED | INVOICE NUMBER | CUSTOMER |
|---|---|---|---|
| 11/15/2012 | $14,193.00 | 67779 | A.R. |
| 11/21/2012 | $17,610.00 | 68691 | A.R. |
| 1/11/2013 | $33,900.00 | 74642 | A.R. |
| 1/24/2013 | $19,344.00 | 76232 | A.R. |
| 3/15/2013 | $20,535.00 | 83280 | A.R. |
| 4/5/2013 | $34,915.00 | 86452 | A.R. |

**B. UNDERREPORTED CASH SALES AND CORRESPONDING FALSE TAX RETURNS**

17. Separate from its factory sales to large stores, AMBIANCE sold merchandise to small businesses and individual "walk-in" customers from its own storefront. AMBIANCE recorded those store sales in different ways depending upon the type of payment received. Specifically, until June 2012, with the knowledge of defendant NOH, AMBIANCE separated its sales records into two separate sequences: "Store 1" and "Store 2." "Store 1" was used to record sales to small businesses paid in cash, credit card, or wire transfer, while nearly all of "Store 2" invoices were paid in cash.

18. Defendant NOH received daily reports of sales activity, including cash sales from the store. Each daily report showed the previous day's true factory and store sales, month-to-date sales balances, year-to-date balances, bank account balances, and the prior day's bank deposits.

19. AMBIANCE used an accounting software system known as "LAMBS" to record its sales, receipts of payment, and accounts receivable. Until June 2012, AMBIANCE used LAMBS software to compile end-of year information for tax purposes, which was forwarded to the accountants/tax preparers for AMBIANCE to use in preparing AMBIANCE's annual corporate tax returns and the individual joint tax return for defendant NOH and his spouse.

20. AMBIANCE was a subchapter S corporation. As such, its gross sales and net income were reported on a Form 1120S, United States Income Tax Return for an S Corporation, which was filed with the Internal Revenue Service of the United States Treasury Department ("IRS"). Taxable income generated by AMBIANCE was reported on an IRS Schedule K-1 that was given to AMBIANCE's owner. The income "flowed through" the corporation to the owner without being taxed at the corporate level. Instead, the net income was reported as such by AMBIANCE's owners, defendant NOH and his spouse, on their jointly filed federal income tax returns (Form 1040).

21. From at least May 2012 through at least October 2013, in Los Angeles County, within the Central District of California, defendant NOH knowingly and intentionally conspired and agreed with others to defraud the United States by deceitful and dishonest means, for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely, the IRS, in the ascertainment, computation, assessment, and collection of the revenue through taxes owed. The scheme worked as follows:

a. When reporting annual sales figures to AMBIANCE's outside accountants, an AMBIANCE employee was instructed, with defendant NOH's knowledge, to omit all "Store 2" sales from the records. The employee was also instructed, with defendant NOH's knowledge, to reduce the value of some "Store 1" cash sales so that reported figures were lower than the true sales amounts.

b. With defendant NOH's knowledge, those reduced figures were sent to AMBIANCE's outside accountants for the purpose of preparing the tax returns for AMBIANCE, as well as a jointly filed individual tax return for defendant NOH and his spouse. By providing such inaccurate information, defendant NOH caused the outside accountants to omit the deleted sales from the schedule K-1, Shareholder's Share of Income, Deductions, and Credits, which was issued to the sole shareholder and incorporated into defendant NOH's jointly filed individual tax return.

c. As a result, defendant NOH, knowingly failed to include the unreported sales on his tax returns and filed those returns knowing of the omitted income. In so doing, defendant NOH knew that the returns contained material misrepresentations about his total income.

**1. <u>2011 Tax Returns</u>**

22. In May 2012, the AMBIANCE employee created a false sales journal for AMBIANCE's 2011 sales, which omitted approximately $13,422,908 in cash sales and reported total sales

for the store of only $22,477,743 (compared to the correct total of $36,439,102).

23. The total amount of unreported cash sales for 2011 was $13,422,908.

24. On October 8, 2012, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2011. In so doing, defendant NOH knowingly and willfully made a materially false statement. Specifically, defendant NOH knew that the return falsely omitted $13,422,908 in taxable income from AMBIANCE to defendant NOH and his spouse, and specifically intended to avoid taxes with this omission.

**2. <u>2012 Tax Returns</u>**

25. The same process was followed again when preparing AMBIANCE and defendant NOH's 2012 tax returns.

26. In June 2013, an AMBIANCE employee, with defendant NOH's knowledge, created create a false sales journal for 2012, which omitted approximately $6,548,442 in cash sales and reported a total store sales of only $8,477,795.77 (compared to the true and complete sales report amount of $15,141,772.87).

27. The total amount of unreported cash sales for 2012 was $6,548,442.

28. On October 9, 2013, defendant NOH subscribed to and authorized the filing of his individual joint tax return, Form 1040, for the tax year 2012. In so doing, defendant NOH knowingly and willfully made a materially false statement. Specifically, defendant NOH knew that the return falsely omitted

$6,548,422 in taxable income from AMBIANCE to defendant NOH and his spouse, and specifically intended to avoid taxes with this omission.

# EXHIBIT C

**EXHIBIT C**

**COMPLIANCE AND ETHICS PROGRAM**

Should the Court impose the sentence agreed to in this Agreement, then in a manner consistent with all of its obligations under this Agreement, Ambiance U.S.A., Inc., doing business as Ambiance Apparel ("Ambiance" or the "Company"), agrees to implement a compliance and ethics program, including internal controls, compliance policies, and procedures in order to ensure that it maintains: (a) an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate, books, records, and accounts; and (b) a rigorous anti-money laundering ("AML") compliance program that incorporates relevant internal accounting controls, as well as policies and procedures designed to effectively detect and deter violations of applicable AML laws and regulations, including the Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.* (collectively, "AML laws"). At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of the Company's existing, internal controls, compliance code, policies, and procedures:

*High-Level Commitment*

1. The Company will ensure that its owners, executives, and senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of AML laws and its compliance code.

*Policies and Procedures*

2. The Company will develop and promulgate a clearly articulated and visible corporate policy against violations of AML laws, which shall be memorialized in a written compliance code.

3. The Company will develop and promulgate written AML compliance policies and procedures designed to reduce the prospect of violations of applicable laws and the Company's compliance code, and the Company will take appropriate measures to encourage and support the observance of its AML policies and procedures by personnel at all levels of the Company. The Company shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the Company. Such policies and procedures will address, at a minimum: (1) customer identification and due diligence requirements; (2) reporting obligations for cash payments; and (3) trade transaction monitoring.

4. The Company will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure the maintenance of fair and accurate books, records, and accounts.

*Periodic Risk-Based Review*

5. The Company will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of the Company, in particular the money laundering risks facing the Company, including, but not limited to, identification and due diligence of its cash-based customers, exposure to the "Black Market Peso Exchange" based on the Company's location and sector of operation, and the process by which merchandise is paid for and declared to authorities.

6. The Company shall review its AML compliance policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking

into account developments in the field and evolving international and industry standards.

*Proper Oversight and Independence*

7. The Company will assign responsibility to one or more senior managers or executives of the Company for the implementation and oversight of the Company's AML compliance code, policies, and procedures. Such senior manager(s) or executive(s) shall have direct reporting lines to Ambiance's owners, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

8. The Company will implement mechanisms designed to ensure that its AML compliance code, policies, and procedures are effectively communicated to all officers, executives, employees and, where necessary, agents (such as customs brokers) and business partners. These mechanisms shall include: (a) periodic training for all officers, executives, employees involved in audit, sales, legal, compliance, accounting, finance, or other positions that otherwise pose AML-related risks to the Company and, where necessary and appropriate, agents and business partners; (b) corresponding certifications by all such individuals certifying compliance with the training requirements.

9. The Company will establish an effective system for providing guidance and advice to individual on complying with the Company's AML compliance program.

*Internal Reporting and Investigation*

10. The Company will establish and maintain an effective system for internal reporting concerning potential violations of AML laws or the Company's ethics and compliance

code, policies, and procedures.

11. The Company will establish and maintain an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of AML laws or the Company's ethics and compliance code, policies, and procedures.

*Enforcement and Discipline*

12. The Company will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

13. The Company will institute appropriate disciplinary procedures to address, among other things, violations of AML laws and the Company's ethics and compliance code, policies, and procedures by the Company's executives, officers, and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the director, officer, or employee.

14. The Company shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall AML compliance program is effective.

# EXHIBIT D

**EXHIBIT D**

**INDEPENDENT CORPORATE COMPLIANCE MONITOR**

1. Within ninety (90) calendar days from the date of sentencing by the Court, Ambiance U.S.A, Inc., doing business as Ambiance Apparel ("Ambiance" or the "Company"), agrees to engage an independent corporate monitor (the "Monitor") for a period not to exceed three years, unless an extension is ordered by the Court.

2. The Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of the sentence so as to specifically address and reduce the risk of any recurrence of the Company's misconduct, including evaluating the Company's corporate compliance program with respect to Anti-Money Laundering laws and regulations (collectively, "AML laws"), and making recommendations for improvement.

3. Within forty-five (45) calendar days after the sentencing, and after consultation with the United States Attorney's Office for the Central District of California (the "USAO"), the Company will propose to the USAO three candidates to serve as the Monitor, who meet the criteria listed below. The Company shall provide enough information, including certifications from the Monitor candidates, to allow the USAO to determine whether the candidates meet the following criteria:
   a. At a minimum, the qualifications and experience sufficient in the opinion of the USAO to properly discharge the Monitor's duties;
   b. The ability to access and deploy appropriate internal Ambiance resources as necessary to discharge the Monitor's duties as described herein;
   c. Sufficient independence from the Company to ensure effective and impartial performance of the Monitor's duties as described in the agreement;
   d. No prior relationship with the Company; and
   e. No adversarial relationship with the USAO in any matter.

4. Within fourteen (14) calendar days of receiving the proposal for the three candidates to serve as the Monitor, the USAO will evaluate the candidates. The USAO will, in its sole

discretion, determine whether the Monitor candidates have met the criteria in the prior paragraph to serve as the Company's Monitor and are otherwise acceptable to the USAO.

5. Within twenty-one (21) calendar days of the Company providing the USAO with the proposal for the three candidates to serve as the Monitor, the USAO and the Company will submit a status report to the Court. In that status report, the Company and the USAO will provide the Court with the name of any candidate for Monitor that is qualified and acceptable to the USAO, his/her qualifications, and his/her certifications. Should the USAO determine, in its sole discretion, that at least one Monitor candidate is qualified and acceptable, the parties shall, at the same time as the status report, submit an application and proposed order for the Court to appoint one of the candidates for Monitor the USAO deems qualified and acceptable. Should the USAO determine, in its sole discretion, that no candidate for Monitor is qualified and acceptable, the parties shall so inform the Court.

6. The Monitor's term shall be three years from the date the Court appoints the Monitor. The Monitor's duties and authority, and the obligations of the Company with respect to the Monitor, the USAO, and the Court, are set forth below.

7. The parties agree that the Monitor is an independent third-party, not an employee or agent of the Company or the USAO, and that no attorney-client relationship shall be formed between the Company and the Monitor.

8. The Monitor will review and evaluate the effectiveness of the Company's internal controls, record-keeping practices, policies, and procedures as they relate to the Company's compliance with AML laws ("AML Policies and Procedures"). This review and evaluation shall include an assessment of the AML Policies and Procedures as actually implemented.

9. The retention agreement between the Company and the Monitor will reference this Agreement and include it as an attachment so the Monitor is fully apprised or his or her duties and responsibilities.

10. The Company and its affiliates shall cooperate fully with the Monitor and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the compliance program of the Company within the scope of his or her responsibilities under this Agreement. To that end, the Company and its affiliates shall provide the Monitor with access to all information, documents, records, facilities and/or employees that fall within the scope of responsibilities of the Monitor under this Agreement, subject to the following limitations:

    a. In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, and/or employees of Ambiance or any affiliated company that may be subject to a valid claim of attorney-client privilege, or attorney-work-product doctrine, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

    b. If the matter cannot be resolved, at the request of the Monitor, the Company shall promptly provide written notice to the Monitor and to the USAO. Such notice shall include a non-privileged description of the nature of the information, documents, records, facilities and/or employees withheld, as well as the basis for the claim. The USAO may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees.

11. During the three-year term, the Monitor shall conduct an initial review and prepare an initial report, followed by two follow-up reviews and reports as described below:

    a. With respect to each of the three reviews, after initial consultations with the Company and the USAO, the Monitor shall prepare a written work plan for each review, which shall be submitted in advance to the Company and the USAO for comment.

b. In order to conduct an effective initial review of the Company's AML Policies and Procedures, the Monitor's initial work plan shall include such steps as are reasonably necessary to develop an understanding of the facts and circumstances surrounding any violations that may have occurred, but the parties do not intend that the Monitor will conduct his or her own investigation into those historical events.

c. Any dispute between the Company and the Monitor with respect to the work plan shall be reported to the USAO, which will recommend a solution to the dispute. Should the Company or the Monitor not agree to the USAO's recommended solution, the parties shall raise the dispute with the US Probation & Pretrial Services Office ("USPO"). If the USPO determines, in its sole discretion, that it can decide the dispute without the intervention of the Court, it shall do so and the Company and the Monitor shall be bound by such a decision. If, instead, the USPO determines, in its sole discretion, that the Company and Monitor should seek a ruling from the Court, the Company and Monitor shall file a joint report with the Court. If requested by the Monitor, the USAO shall assist the Monitor in the drafting and filing of the joint report.

12. In connection with the initial review, the Monitor shall issue a written report within one hundred twenty (120) calendar days of the appointment of the Monitor by the Court setting forth the Monitor's assessment and, if appropriate and necessary, making recommendations reasonably designed to improve the Company's AML Policies and Procedures. The Monitor shall provide the report to the Company and contemporaneously transmit copies to the USAO, the USPO, and the Court.

a. Within one hundred twenty (120) calendar days after receiving the Monitor's report, the Company shall consider, in good faith, adopting the recommendations set forth in the report.

b. Within sixty (60) calendar days after receiving the report, the Company shall advise the Monitor, the USAO, the USPO, and the Court, in writing of any recommendations that the Company does not adopt. The Company shall explain why it did not adopt any recommendations, including whether it considers a

particular recommendation unduly burdensome, impractical, costly or otherwise inadvisable. As to any recommendation on which the Company and the Monitor ultimately do not agree, the views of the Company and the Monitor shall promptly be brought to the attention of the USAO and the USPO. The USAO and USPO may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether to bring relevant facts to the attention of other parts of the U.S. government and the Court.

13. The Monitor shall undertake two follow-up reviews to further monitor and assess whether the Company's AML Policies and Procedures are reasonably designed to detect and prevent violations of applicable AML laws.

14. Within sixty (60) calendar days of initiating each follow-up review, the Monitor shall:

a. Complete the review;

b. Certify whether the Company's AML Policies and Procedures are appropriately designed and implemented to ensure compliance with the applicable AML laws; and

c. Report on the Monitor's findings in the same fashion as with respect to the initial review.

15. The first follow-up review and report shall be completed by one year after the initial review. The second follow-up review and report shall be completed by one year after the completion of the first follow-up review. The Monitor may extend the time period for submission of the follow-up reports with prior written approval of the Court.

16. In undertaking the assessments and reviews described above, the Monitor shall formulate conclusions based on:

a. Inspection of relevant documents, including the policies and procedures relating to the Company's AML Policies and Procedures;

b. On-site observation and testing of the Company's systems and procedures, including its internal controls, record-keeping, and internal audit procedures;

c. Meetings with, and interviews of, relevant employees, directors and other persons at mutually convenient times and places; and

d. Analyses, studies and testing of the Company's AML Policies and Procedures, as well as related record-keeping practices and internal controls.

17. Should the Monitor, during the course of his or her engagement, discover credible evidence that potentially unlawful transactions were not reported pursuant to applicable AML laws, the Monitor shall promptly report such conduct to the Company's executives for further investigation, unless the Monitor believes, in the exercise of his or her discretion, that such disclosure should be made directly to the USAO and the USPO.

18. If the Monitor refers the matter only to the Company's executives, the executive shall promptly report the same to the USAO and the USPO and contemporaneously notify the Monitor that such report has been made. If the Company fails to make disclosure to the USAO and the USPO within fourteen (14) business days of the Monitor's report of such conduct to the Company, the Monitor shall independently disclose his or her findings to the USAO and the USPO.

19. Further, in the event that the Company, or any affiliate or person working directly or indirectly for the Company, refuses to provide information necessary for the performance of the Monitor's responsibilities, the Monitor shall promptly disclose that fact to the USAO and the USPO. The Company shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason.

20. At least annually, and more frequently if appropriate, representatives of the Company and the USAO will meet together to discuss the monitorship and any suggestions, comments or proposals for improvement the Company may wish to discuss with the USAO. Thereafter, and on an annual basis, the Company, the USAO and the Monitor, either jointly or separately, shall provide the Court with a status report of the Company's performance with respect to its obligations under the Plea Agreement, incorporation of the Monitor's recommendations, and its compliance with AML and other laws.

# EXHIBIT E

# EXHIBIT E

This Exhibit sets out the agreed-upon sums and payment schedule for forfeiture and restitution amounts owed pursuant to the plea agreements between Ambiance U.S.A., Inc. ("Ambiance") and the United States Attorney's Office for the Central District of California ("USAO") and between Sang Bum Noh, also known as "Ed Noh," and the USAO. This exhibit is intended to supplement the plea agreements and is not intended to be a complete recitation of all relevant terms.

**Forfeiture**: Pursuant to Federal Rule of Criminal Procedure 32.2, the money judgment of forfeiture, for which Ed Noh and Ambiance are jointly and severally liable, is in the amount of $81,564,856.08 (the "Forfeiture Amount").

**Fine:** The parties agree that in light of the Forfeiture Amount, no fine shall be imposed.

**Restitution:** The total restitution amount, for which Ed Noh and Ambiance are jointly and severally liable, is $35,227,855.45 (the "Restitution Amount"). This Restitution Amount consists of $16,806,412.04 due to the Internal Revenue Service in unpaid taxes, penalties, and interest (the "IRS Restitution Amount") and $18,421,443.41 due to the Department of Homeland Security/Customs and Border Protection for lost revenue and interest (the "DHS/CBP Restitution Amount").

**Payment Schedule:** Payment of the Forfeiture Amount and the Restitution Amount shall be as follows:

The Seized Funds: Ed Noh and Ambiance agree that $35,227,855.45 of the funds seized by law enforcement officials on September 20, 2014, shall be applied to the Restitution Amount. Upon

sentencing, the government will transmit $35,227,855.45 to the Clerk of the Court to be applied to the outstanding restitution amount. Ed Noh and Ambiance agree to forfeit the remaining $1,104,997.55 seized on September 20, 2014, and that those funds were derived from or acquired as a result of, or used to facilitate the commission of, and involved in the illegal activity to which defendants are pleading guilty. Ed Noh and Ambiance are jointly and severally liable for both the Forfeiture Amount and the Restitution Amount in full.

Remaining Payments: The money judgment of forfeiture (referred to in the plea agreement) shall be payable to the United States on the following schedule:

1) $10,000,000.00, due and payable 90 days after the sentencing of Ed Noh or Ambiance, whichever is later.
2) The remaining $71,564,856.08 to be paid in five equal installments of $14,312,971.22 each, with the first payment due and payable one year after the sentencing of Ed Noh or Ambiance, whichever is later (the "First Payment Date"), and the remaining four installments each due one year from the First Payment Date for the remaining four years.

**Inability to Pay:** If at any time during the proposed payment schedule, Ed Noh and Ambiance are unable to make a payment in accordance with the schedule outlined above, they shall notify the USAO by certified mail no later than 120 days prior to the date such payment is due. Such notice shall be provided to:

United States Attorney's Office
Chief of the Criminal Division

312 N. Spring Street, Suite 1200
Los Angeles, CA 90012

Upon such notification, Ed Noh and Ambiance will:

1) Within 10 days of a request by the USAO, provide the USAO with credit report on Ed Noh and Annie Noh.

2) Upon request by the USAO, consent and make available – to the USAO and agents working on its behalf – any and all financial documents and related information pertaining to Ambiance, Ed Noh, and Annie Noh.

3) Complete updated Financial Disclosure Statements (provided by the USAO) with respect to Ed Noh and Ambiance and deliver the updated, signed, and dated statements to the USAO no later than seven (7) days after notifying the USAO. Copies of the signed statements, along with all required supporting documentation, shall be mailed to:

United States Attorney's Office
Chief of the Criminal Division
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012

4) No later than seven (7) days after notifying the USAO, disclose to the USAO any and all property, real or personal, in which Ed Noh, Annie Noh, or Ambiance have any ownership interest.

To aid the USAO in assessing defendants' ability to pay in accordance with the payment schedule, Ed Noh and Ambiance agree that the USAO may request discovery in accordance with Federal Rule of Civil Procedure 69(a)(2) and that such rule applies to the financial

obligations as set forth in the payment schedule.

If the USAO determines that defendants are unable to pay in accordance with the schedule outlined above, the parties will notify the Court and request a modified payment schedule. If the USAO identifies substitute assets in which Ambiance, Ed Noh, and/or Annie Noh have an ownership interest, the USAO may ask the Court allow such assets to be seized and forfeited to satisfy the judgment.