# EXHIBIT 1

**EXHIBIT D**

**INDEPENDENT CORPORATE COMPLIANCE MONITOR**

1. Within ninety (90) calendar days from the date of sentencing by the Court, Ambiance U.S.A., Inc., doing business as Ambiance Apparel ("Ambiance" or the "Company"), agrees to engage an independent corporate monitor (the "Monitor") for a period not to exceed three years, unless an extension is ordered by the Court.

2. The Monitor's primary responsibility is to assess and monitor the Company's compliance with the terms of the sentence so as to specifically address and reduce the risk of any recurrence of the Company's misconduct, including evaluating the Company's corporate compliance program with respect to Anti-Money Laundering laws and regulations (collectively, "AML laws"), and making recommendations for improvement.

3. Within forty-five (45) calendar days after the sentencing, and after consultation with the United States Attorney's Office for the Central District of California (the "USAO"), the Company will propose to the USAO three candidates to serve as the Monitor, who meet the criteria listed below. The Company shall provide enough information, including certifications from the Monitor candidates, to allow the USAO to determine whether the candidates meet the following criteria:

   a. At a minimum, the qualifications and experience sufficient in the opinion of the USAO to properly discharge the Monitor's duties;

   b. The ability to access and deploy appropriate internal Ambiance resources as necessary to discharge the Monitor's duties as described herein;

   c. Sufficient independence from the Company to ensure effective and impartial performance of the Monitor's duties as described in the agreement;

   d. No prior relationship with the Company; and

   e. No adversarial relationship with the USAO in any matter.

4. Within fourteen (14) calendar days of receiving the proposal for the three candidates to serve as the Monitor, the USAO will evaluate the candidates. The USAO will, in its sole

1

Case 2:20-cr-00370-VAP   Document 6   Filed 08/25/20   Page 92 of 101   Page ID #:128
Case 2:20-cr-00370-AB   Document 111-1   Filed 12/23/24   Page 3 of 7   Page ID
#:1452

discretion, determine whether the Monitor candidates have met the criteria in the prior paragraph to serve as the Company's Monitor and are otherwise acceptable to the USAO.

5.   Within twenty-one (21) calendar days of the Company providing the USAO with the proposal for the three candidates to serve as the Monitor, the USAO and the Company will submit a status report to the Court.  In that status report, the Company and the USAO will provide the Court with the name of any candidate for Monitor that is qualified and acceptable to the USAO, his/her qualifications, and his/her certifications.  Should the USAO determine, in its sole discretion, that at least one Monitor candidate is qualified and acceptable, the parties shall, at the same time as the status report, submit an application and proposed order for the Court to appoint one of the candidates for Monitor the USAO deems qualified and acceptable. Should the USAO determine, in its sole discretion, that no candidate for Monitor is qualified and acceptable, the parties shall so inform the Court.

6.   The Monitor's term shall be three years from the date the Court appoints the Monitor. The Monitor's duties and authority, and the obligations of the Company with respect to the Monitor, the USAO, and the Court, are set forth below.

7.   The parties agree that the Monitor is an independent third-party, not an employee or agent of the Company or the USAO, and that no attorney-client relationship shall be formed between the Company and the Monitor.

8.   The Monitor will review and evaluate the effectiveness of the Company's internal controls, record-keeping practices, policies, and procedures as they relate to the Company's compliance with AML laws ("AML Policies and Procedures").  This review and evaluation shall include an assessment of the AML Policies and Procedures as actually implemented.

9.    The retention agreement between the Company and the Monitor will reference this Agreement and include it as an attachment so the Monitor is fully apprised or his or her duties and responsibilities.

10.    The Company and its affiliates shall cooperate fully with the Monitor and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about the compliance program of the Company within the scope of his or her responsibilities under this Agreement.  To that end, the Company and its affiliates shall provide the Monitor with access to all information, documents, records, facilities and/or employees that fall within the scope of responsibilities of the Monitor under this Agreement, subject to the following limitations:

    a.    In the event that the Company seeks to withhold from the Monitor access to information, documents, records, facilities, and/or employees of Ambiance or any affiliated company that may be subject to a valid claim of attorney-client privilege, or attorney-work-product doctrine, the Company shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor.

    b.    If the matter cannot be resolved, at the request of the Monitor, the Company shall promptly provide written notice to the Monitor and to the USAO.  Such notice shall include a non-privileged description of the nature of the information, documents, records, facilities and/or employees withheld, as well as the basis for the claim.  The USAO may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees.

11.    During the three-year term, the Monitor shall conduct an initial review and prepare an initial report, followed by two follow-up reviews and reports as described below:

    a.    With respect to each of the three reviews, after initial consultations with the Company and the USAO, the Monitor shall prepare a written work plan for each review, which shall be submitted in advance to the Company and the USAO for comment.

Case 2:20-cr-00370-VAP   Document 6   Filed 08/25/20   Page 94 of 101   Page ID #:130
Case 2:20-cr-00370-AB   Document 111-1   Filed 12/23/24   Page 5 of 7   Page ID
#:1454

    b.    In order to conduct an effective initial review of the Company's AML Policies and Procedures, the Monitor's initial work plan shall include such steps as are reasonably necessary to develop an understanding of the facts and circumstances surrounding any violations that may have occurred, but the parties do not intend that the Monitor will conduct his or her own investigation into those historical events.

    c.    Any dispute between the Company and the Monitor with respect to the work plan shall be reported to the USAO, which will recommend a solution to the dispute. Should the Company or the Monitor not agree to the USAO's recommended solution, the parties shall raise the dispute with the US Probation & Pretrial Services Office ("USPO"). If the USPO determines, in its sole discretion, that it can decide the dispute without the intervention of the Court, it shall do so and the Company and the Monitor shall be bound by such a decision. If, instead, the USPO determines, in its sole discretion, that the Company and Monitor should seek a ruling from the Court, the Company and Monitor shall file a joint report with the Court. If requested by the Monitor, the USAO shall assist the Monitor in the drafting and filing of the joint report.

12.    In connection with the initial review, the Monitor shall issue a written report within one hundred twenty (120) calendar days of the appointment of the Monitor by the Court setting forth the Monitor's assessment and, if appropriate and necessary, making recommendations reasonably designed to improve the Company's AML Policies and Procedures. The Monitor shall provide the report to the Company and contemporaneously transmit copies to the USAO, the USPO, and the Court.

    a.    Within one hundred twenty (120) calendar days after receiving the Monitor's report, the Company shall consider, in good faith, adopting the recommendations set forth in the report.

    b.    Within sixty (60) calendar days after receiving the report, the Company shall advise the Monitor, the USAO, the USPO, and the Court, in writing of any recommendations that the Company does not adopt. The Company shall explain why it did not adopt any recommendations, including whether it considers a

4

particular recommendation unduly burdensome, impractical, costly or otherwise inadvisable. As to any recommendation on which the Company and the Monitor ultimately do not agree, the views of the Company and the Monitor shall promptly be brought to the attention of the USAO and the USPO. The USAO and USPO may consider the Monitor's recommendation and the Company's reasons for not adopting the recommendation in determining whether to bring relevant facts to the attention of other parts of the U.S. government and the Court.

13. The Monitor shall undertake two follow-up reviews to further monitor and assess whether the Company's AML Policies and Procedures are reasonably designed to detect and prevent violations of applicable AML laws.

14. Within sixty (60) calendar days of initiating each follow-up review, the Monitor shall:
   a. Complete the review;
   b. Certify whether the Company's AML Policies and Procedures are appropriately designed and implemented to ensure compliance with the applicable AML laws; and
   c. Report on the Monitor's findings in the same fashion as with respect to the initial review.

15. The first follow-up review and report shall be completed by one year after the initial review. The second follow-up review and report shall be completed by one year after the completion of the first follow-up review. The Monitor may extend the time period for submission of the follow-up reports with prior written approval of the Court.

16. In undertaking the assessments and reviews described above, the Monitor shall formulate conclusions based on:
   a. Inspection of relevant documents, including the policies and procedures relating to the Company's AML Policies and Procedures;
   b. On-site observation and testing of the Company's systems and procedures, including its internal controls, record-keeping, and internal audit procedures;

  c. Meetings with, and interviews of, relevant employees, directors and other persons at mutually convenient times and places; and

  d. Analyses, studies and testing of the Company's AML Policies and Procedures, as well as related record-keeping practices and internal controls.

17. Should the Monitor, during the course of his or her engagement, discover credible evidence that potentially unlawful transactions were not reported pursuant to applicable AML laws, the Monitor shall promptly report such conduct to the Company's executives for further investigation, unless the Monitor believes, in the exercise of his or her discretion, that such disclosure should be made directly to the USAO and the USPO.

18. If the Monitor refers the matter only to the Company's executives, the executive shall promptly report the same to the USAO and the USPO and contemporaneously notify the Monitor that such report has been made. If the Company fails to make disclosure to the USAO and the USPO within fourteen (14) business days of the Monitor's report of such conduct to the Company, the Monitor shall independently disclose his or her findings to the USAO and the USPO.

19. Further, in the event that the Company, or any affiliate or person working directly or indirectly for the Company, refuses to provide information necessary for the performance of the Monitor's responsibilities, the Monitor shall promptly disclose that fact to the USAO and the USPO. The Company shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason.

20. At least annually, and more frequently if appropriate, representatives of the Company and the USAO will meet together to discuss the monitorship and any suggestions, comments or proposals for improvement the Company may wish to discuss with the USAO. Thereafter, and on an annual basis, the Company, the USAO and the Monitor, either jointly or separately, shall provide the Court with a status report of the Company's performance with respect to its obligations under the Plea Agreement, incorporation of the Monitor's recommendations, and its compliance with AML and other laws.